UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

GIOCAR AMERICA, INC., a Nevada corporation,

Plaintiff(s),

v.

INDUSTRIAS GALFER S.A,, a Spanish Sociedad Anonima,

Defendant(s).

Case No.2:25-CV-1250  JCM (DJA)

ORDER

Presently before the court is defendant Industrias Galfer S.A.'s ("IG") motion to dismiss the amended complaint.  (ECF No. 31).  Plaintiff Giocar America ("Giocar") filed a response, (ECF No. 39), to which defendant replied (ECF No. 44).

Also before the court is Giocar's motion for leave to file a sur-reply.  (ECF No. 48).  IG filed a response (ECF No. 50), to which Giocar replied (ECF No. 51).

I.    **Background**

A.    Facts

IG is a Spanish company founded by Maffio Milesi in 1952 and headquartered in Barcelona, specializing in the manufacture of brake discs and brake pads.  (ECF No. 31, Ex. 3 ¶ 2) (Decl. F. Catena).  Since 1970, Milesi's sons—Umberto, Alfredo, and Giorgio—have co-owned IG in equal parts.  (*Id.* ¶ 3).  Giorgio moved to the United States in 1992, where he started Giocar. (*Id.* ¶ 4); (ECF No. 39-1 ¶ 2) (Decl. S. Milesi).

Giocar manufactures, imports, and distributes motorcycle and bicycle parts in the United States, with a focus on braking parts and components.  (ECF No. 21 ¶ 7).  For more than twenty years, Giocar imported and resold IG's parts in the United States, which made up the vast majority of its business.  (*Id.*); (ECF No. 39-1 ¶ 12).[1]  Giocar and IG operated on a verbal distribution agreement until May 2023, when the companies' principals entered into a written distribution agreement.  (ECF No. 39 ¶ 12).  This agreement is the subject of the motion to dismiss before the court.

Giocar alleges that it adopted and began using a WAVE trademark with its goods.  Such use in the United States has been ongoing since at least July 1, 1999.  (ECF No. 21 ¶ 25).  Giocar alleges that it has significant common law trademark rights in the WAVE trademark in the United States and is the owner of U.S. Trademark Registration No. 3,267,005 for the mark WAVE for "disc brakes for land vehicles."  (ECF No. 21 ¶¶ 32–33).

On April 8, 2025, IG terminated the parties' relationship.  (ECF No. 21 ¶ 45); (ECF No. 31, Ex. 3 ¶ 26).  IG allegedly contacted Giocar's U.S. customers, telling them not to purchase products from Giocar in the future, and that it would not support Industrias Galfer (GALFER) branded goods customers purchased from Giocar.  (ECF No. 21 ¶ 51).  Giocar claims that its customers have refrained from ordering products from Giocar and they have even attempted to return GALFER branded products to Giocar that Giocar had purchased from IG.  (ECF No. 21 ¶ 56).

Moreoever, Giocar alleges that despite being aware of Giocar's ownership and use of the WAVE mark, "IG sold parts featuring the WAVE trademark to customers in the United States,

---

[1] It also manufactured its own parts, as well as imported and assembled parts and systems from other suppliers to cater to its customers.  (ECF No. 21 ¶ 7).

- 2 -

including but not limited to disc brakes for land vehicles." (ECF No. 21 ¶¶ 38, 39).

B.     Procedural History

Giocar filed suit in federal court on July 11, 2025, asserting federal and state law claims for trademark counterfeiting and infringement, false designation of origin, false designation of geographic origin, deceptive trade practices, intentional interference with prospective economic advantage, and unfair competition.  After IG moved to dismiss, Giocar amended the complaint. (ECF Nos. 11, 21).  On December 19, 2025, IG filed a motion to dismiss Giocar's amended complaint (ECF No. 31).  It then answered the amended complaint and filed counterclaims against Giocar.  (ECF No. 47).  The court ordered supplemental briefing on the motion to dismiss, (ECF No. 58), which the parties provided (ECF Nos. 59, 60).

**II.     Motion for Leave to File Sur-reply**

As a preliminary matter, Giocar requests that the court either (1) disregard IG's reply brief arguments pertaining to the Hague Convention on Choice of Court Agreements on the grounds that they were newly presented and misleading, or in the alternative, (2) permit it leave to file a brief sur-reply.  (ECF No. 48).

The court generally refrains from accepting sur-replies.  *See* LR 7-2(b).  However, in educating itself on the laws that govern Spanish courts, the court finds it appropriate to consider briefing from both the defendants and plaintiffs.  The court grants Giocar leave to file the sur-reply.

**III.     Motion to Dismiss**

A.     Legal Standard

"[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of forum non conveniens." *Sun v. Advanced China Healthcare, Inc.*,

901 F.3d 1081, 1087 (9th Cir. 2018) (quoting *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 60 (2013)). "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Atl. Marine Const. Co.*, 571 U.S. at 62. Unlike in the situation where there is no forum-selection clause, the plaintiff bears the burden of "showing why the court should not transfer the case to the forum to which the parties agreed." *Id.* at 64. The plaintiff's subsequent preferred forum bears no weight. *Id.* at 63–64.

A court must deem all factors relating to the private interests of the parties "entirely in favor of the preselected forum." *Id.* at 64, 62 n.6. While public interest factors may be considered, they will rarely defeat a transfer motion. *Id.*; *Sun*, 901 F.3d at 1088.

Forum selection clauses are prima facie valid. *Mao v. Sanum Invs., Ltd.*, No. 2:14-cv-00721, 2014 U.S. Dist. LEXIS 146983, at *5 (D. Nev. Oct. 15, 2014) (quoting *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988)). Because a forum selection clause "represents the parties' agreement as to the most proper forum," it "should control except in unusual cases." *Atl. Marine Const. Co.*, 571 U.S. at 63, 64. Only in extraordinary circumstances unrelated to the convenience of the parties should a motion to enforce a forum-selection clause be denied. *Id.* at 62.

B.    Discussion

IG moves to dismiss the first amended complaint under the doctrine of forum non conveniens. It argues that the distribution agreement contains a valid and enforceable forum selection clause that covers the disputes and claims at issue. Giocar argues that the clause is permissive, and thus Spain is not the exclusive forum agreed upon by the parties. Alternatively, Giocar argues that the clause should not be enforced because Spain is an inadequate forum,

adjudication of trademark issues in Spain contravenes public policy, and the forum selection clause was the product of overreaching.

*1.      Validity and Scope of the Clause*

Courts generally apply federal contract law to interpret a forum selection clause, unless the agreement containing the forum selection clause dictates otherwise. *See Sun*, 901 F.3d at 1086; *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 994 (9th Cir. 2006); *Albemarle Corp. v. Astrazeneca UK Ltd.*, 628 F.3d 643, 651 (4th Cir. 2010); *Yavuz v. 61 MM, Ltd.*, 465 F.3d 418, 430 (10th Cir. 2006) (holding that courts should "ordinarily honor" an international commercial agreement's forum selection clause as construed under the choice of law provision); *Stellia Ltd. v. B+S Card Serv. GmbH*, No. 2:12-cv-01099, 2013 WL 1195709, at *5 (D. Nev. Mar. 22, 2013) (validity of forum selection clause governed by jurisdiction specified in choice of law provision).

Here, the parties expressly submitted that the distribution agreement "shall be governed by Spanish legislation." (ECF No. 31, Ex. 2 ¶ 25.1).  Thus, the scope and validity of the forum selection clause must be assessed under Spanish law. *See, e.g.*, *E. & J. Gallo Winery*, 446 F.3d at 994.

Article 1281 of the Spanish Civil Code (Código Civil) provides that "[i]f the terms of a contract are clear and do not leave any doubt as to the intention of the contracting parties, they shall abide by the literal meaning of its clauses." CÓDIGO CIVIL [CIVIL CODE] art. 1281 (Spain); *see* SPANISH CIVIL CODE, MINISTERIO DE JUSTICIA (2016) (unofficial English translation issued pursuant to Article 6 of Royal Decree 2555/1977, of 27th August).  However, if the "words seem contrary to the evident intention of the contracting parties, the latter shall prevail over the former." CÓDIGO CIVIL art. 1281.  Spanish courts are directed to construe contractual clauses "in connection with each other, attributing any doubtful clauses the meaning resulting from the whole." CÓDIGO

CIVIL art. 1285.[2]

Here, the forum selection clause applies to "any matter relating to the interpretation or performance" of the distribution agreement.[3]  Only disputes that do not have some logical or causal connection to the interpretation or performance of the agreement fall outside of the scope of the clause.  *See "relate*," MERRIAM-WEBSTER, https://perma.cc/XN7D-YLHK (last visited Apr. 20, 2026).  Thus, a broad category of disputes falls under the clause.

With this scope in mind, the court considers whether each of Giocar's claims are covered by the forum selection clause.

### i.       Trademark Infringement Claims

Giocar alleges trademark infringement under common law and the Lanham Act, 15 U.S.C. § 1114.  Whether Giocar can even bring a trademark infringement claim requires, first and foremost, interpretation of distribution agreement.

Clause 7 of the distribution agreement states that the "signing of this contract does not imply any transfer or assignment in favor of [Giocar] of the . . . Intellectual Property rights that IG holds or may hold over the Products, their form or presentation, as well as over the Trademark. .

---

[2] Defendant points out that Spain is also a member of the Hague Convention on Choice of Court Agreements, "which applies in international cases to exclusive choice of court agreements concluded in civil or commercial matters."  HAGUE CONVENTION ON CHOICE OF COURT AGREEMENTS [HAGUE CONVENTION] (2005) art. 1(1).  The Convention outlines uniform forum selection rules, including scope, validity, and effect thereof, for its member states.  *See generally* HAGUE CONVENTION.  Spain is a contracting state—but the United States is not.  *See HCCH Members: United States*, HAGUE CONFERENCE ON PRIVATE INT'L L. https://www.hcch.net/en/states/hcch-members/details1/?sid=76 (last visited Apr. 24, 2026); *see also* HAGUE CONVENTION Preamble, art. 1(2).  Thus, Spain would not be bound to apply the Convention to the disputes in issue.

[3] The clause in issue states the following:
> For any matter relating to the interpretation or performance of the Contract, the parties expressly waive their own jurisdiction, if any, and submit to the jurisdiction of the Courts and Tribunals of Barcelona.

(ECF No. 31, Ex. B cl. 25.3).

.. IG will be the sole and exclusive owner of the same." (ECF No. 31, Ex. B) (English Translation of Distribution Agreement). The agreement also states that Giocar will "refrain from applying for any Industrial or Intellectual Property registration in relation to the Products…and/or Trademarks[.]" (*Id.* cl. 7.2). Moreover "[a]ny trademark applied for or granted owned by" [*sic*] Giocar that "in whole or in part incorporates a trademark or denomination used and/or registered by IG must be assigned free of charge" to IG. (*Id.* cl. 7.3).

Considering these clauses, a Spanish court would need to interpret the distribution agreement to determine the obligations of the parties, e.g., whether Giocar was obligated to assign intellectual property rights, including the disputed WAVE mark, to IG.[4] Interpretation of Giocar's obligations with respect to intellectual property rights pursuant to the distribution agreement falls squarely within the literal meaning of the forum selection clause. *See* CÓDIGO CIVIL art. 1281. In that vein, any validity of assignment considerations is for a Spanish court to determine in light of the contracting parties' selected choice of law and forum. *See Atl. Marine Cost. Co.*, 571 U.S. at 64; *see also Pesquera v. Perez*, No. 20-cv-02128, 2021 U.S. Dist. LEXIS 14620, at *54 (N.D. Cal. Jan. 26, 2021).

### ii.    Torts: False Designation of Origin and Deceptive Trade Practices

Giocar's claims for false designation of origin, 15 U.S.C. § 1125(a), deceptive trade practices under the Nevada Deceptive Trade Practices Act, NRS 41.600(3) and NRS 598.0915, and common law unfair competition concern the true origin of IG's goods and are based in part on Giocar's trademark infringement claims (which the court has determined fall under the forum

---

[4] This is not a novel understanding of forum selection law. *See also Pesquera v. Perez*, No. 20-cv-02128, 2021 U.S. Dist. LEXIS, 14620, at *54 (N.D. Cal. Jan. 26, 2021) (determining whether defendant validly transferred the mark in issue via upon incorporation of the company-plaintiff "will be determined under Spanish law, not under American trademark law").

selection clause).  *See supra* Section III.B.1.i.

These claims relate to the performance of the agreement.  The distribution agreement directs that "IG will deliver the products properly packaged, including the information necessary to identify the manufacturer, to [Giocar]."  (ECF No. 31, Ex. 2 cl. 6.1).  Naturally, any misleading on IG's behalf as to the origin of these products implicates its duty to appropriately identify the manufacturer pursuant to the distribution agreement.  Additionally, Giocar was "responsible for verifying that they comply with the legislation and/or regulations applicable to the Territory," *before* marketing the products.  (*Id.* cl. 4.10).  Such a clause may bear on liability or be raised as a defense to the false designation of origin claims.

Because consideration of these claims is entwined with an analysis of performance obligations under the distribution agreement, the false designation of origin claims fall squarely within the ambit of the forum selection clause.

### iii.  Torts: False Designation of Geographic Origin

Giocar's false designation of geographic origin claim differs from the false origin claim. Whereas Giocar's false designation of origin claim implicates trademark issues, its claim for false designation of *geographic* origin under 15 U.S.C. § 1125(a)(1)(B) does not.  It is relevant to the court, therefore, that the latter claim also spans a time both before and after inception of the agreement.[5]  (ECF No. 21 ¶¶ 7–10, 23–24).

The distribution agreement does not state that the forum selection and choice of law clause would apply to disputes arising from actions that took place before the formalization of the agreement.  To the contrary, the agreement explicitly states: "This distribution contract shall enter

---

[5] While this could be true of the trademark-related claims, it is beside the point in the face of the intellectual property clauses.

- 8 -

into force on the date it is signed." (*See* ECF No. 31, Ex. 2 cl. 3.1). Thus, any alleged misrepresentations made by IG as to the geographic origins of its products arising from sales to Giocar before the parties entered into the agreement would not be controlled by the agreement or its forum selection and choice of law clauses. *See* CÓDIGO CIVIL art. 1281.

**iv. Torts: Intentional Interference**

Finally, Giocar asserts a claim for intentional interference with prospective economic advantage. This claim is "related to" the performance and/or interpretation of the distribution agreement.

The challenged conduct here occurred after the termination of the agreement. (*See* ECF No. 21 ¶¶ 81–87); (ECF No. 21, Ex. 7). A court reviewing Giocar's claims for intentional interference with prospective economic advantage would naturally consider the consequences of termination as laid out in the distribution agreement. (ECF No. 31, Ex. B cl. 17). Any communication or conduct that may have occurred before termination would require a court to also consider clause 2.3, wherein IG agreed to refrain from actively engaging in the sales of products in the United States. Accordingly, Giocar's claim for intentional interference with prospective economic advantage falls within the scope of the forum selection clause.

    2.    *Exclusivity of Jurisdiction*

Giocar argues that Spain is one of many possible forums in which the parties could litigate, not the exclusive forum in which the parties agreed to litigate. This argument is unavailing.

When parties expressly agree to submit to the jurisdiction of Spanish courts, this "shall be understood" as the assignment of jurisdiction "over certain or all disputes that have arisen or may arise between them with respect to a specific legal relationship." LEY ORGANICA DEL PODER JUDICIAL [ORGANIC LAW OF THE JUDICIARY] art. 22 bis (Spain); Regulation (EU) No 1215/2012

of the European Parliament and of the Council of 12 December 2012 on Jurisdiction and the Enforcement of Judgments in Civil and Commercial Matters (recast), 2012 O.J. (L 351) art. 25(1) (echoing the same for submission to the jurisdiction of courts of member states of the European Union).    "Such jurisdiction shall be exclusive unless the parties have agreed otherwise." Regulation (EU) No 1215/2012 art. 25(1).

In this clause, the parties expressly submitted themselves to the jurisdiction of the courts of Barcelona without mention of non-exclusivity.    Thus, disputes within the scope of the distribution agreement (i.e., "certain" disputes) *shall* be conferred only to the courts of Barcelona. *See* ORGANIC LAW OF THE JUDICIARY art. 22 bis; Brussels I bis.    Giocar's claims for trademark infringement, false designation of origin, deceptive trade practices, common law unfair competition, and false designation of geographic origin (during pendency of the written agreement), fall within the scope of the distribution agreement and must be conferred to a Barcelona court barring a finding of unenforceability.    *See* ORGANIC LAW OF THE JUDICIARY art. 22 bis; Brussels I bis.

### 3.    *Enforceability*

The court next considers whether the forum selection clause is enforceable.    There are very limited exceptions in which a court should not give controlling weight to a valid forum-selection clause.    The Ninth Circuit follows guidance from the Supreme Court as to what constitutes an "exceptional reason" or "extraordinary circumstance" in which a court should not enforce a forum-selection clause.    These are situations where a plaintiff makes a strong showing that: "(1) the clause is invalid due to fraud or overreaching; (2) enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or judicial decision, or (3) trial in the contractual forum will be so gravely difficult and inconvenient that the litigant will for all

practical purposes be deprived of his day in court." *Sun*, 901 F.3d at 1088 (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 (1972)) (internal quotation marks omitted); *see also Murphy v. Schneider Nat'l Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004).

The court analyzes each situation in turn.

### i.      Fraud/Overreaching

Giocar argues that the distribution agreement and associated forum selection clause should not be enforced because they are the product of overreaching. "Overreaching" refers "to one party's unfair exploitation of its overwhelming bargaining power or influence over the other party." *Rivera v. Cento Medico de Turabo Inc.*, 575 F.3d 10, 21 (1st Cir. 2009). At the same time, "unequal bargaining power will not invalidate a forum-selection clause," *Mao*, 2014 U.S. Dist. LEXIS 146983, at *6, except in extreme circumstances such as when the "forum selection provision has no justification other than as a means of maximizing an advantage over franchisees." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1290 (9th Cir. 2006) (quotations and alterations omitted).

Giocar claims that IG had "overwhelming bargaining power" because 95% of Giocar's revenues came from the sales of IG products when IG presented the distribution agreement to Giocar. (ECF No. 39 at 16); (ECF No. 39-1 ¶ 13). IG informed Giocar that it would cease future shipments unless Giocar signed the distribution agreement. (ECF No. 39-1 ¶ 12). Thus, Giocar claims it had to sign the agreement or go out of business. (*Id.* ¶ 13).

That IG would cease operations with Giocar if Giocar did not sign the agreement does not render the agreement a product of overreaching. It was well within IG's rights to formalize an agreement in writing. Giocar does not have a right to continue being IG's exclusive distributor, despite the parties' history of operating on a prior verbal agreement. (*See id.* ¶ 12).

- 11 -

Both IG and Giocar were sophisticated parties to an international transaction. Nothing about the contract suggests that it was a boilerplate agreement that IG used with multiple distributors. (ECF No. 31, Ex. 2); *see* LEY 7/1998, DE 13 DE ABRIL, SOBRE CONDICIONES GENERALS DE LA CONTRATACIÓN [LAW 7/1998, OF APRIL 13, ON GENERAL CONDITIONS OF CONTRACTING] art. 1 (Spain) (describing standard terms of contracting and defining adhesion clauses). Rather, it appears to be explicitly crafted to its relationship with Giocar America. (ECF No. 31, Ex. 2). Indeed, Giocar admits it was able to negotiate "yearly minimum sales for certain products, discussions around territories, and other minor points." (ECF No. 39-1 ¶ 13). The provision granting Giocar an exclusive distribution right was also favorable to it. (ECF No. 31, Ex. 2 cl. 2). Its inability to negotiate successfully, or failure to obtain everything it pleased, does not render the agreement a product of "overreaching."

The forum selection and choice of law provisions were not included without justification. *See Nagrampa*, 469 F.3d at 1290; *Rivera*, 575 F.3d at 21. Considering the international nature of the agreement, it would make sense to include choice of law and forum selection provisions. It is doubtful that the selection of Spain was intended to unfairly exclude one party from asserting its legal rights, considering that both parties have connections to Spain and the agreement was drafted in Spanish. (ECF No. 31, Ex. 1) (Spanish version of Distribution Agreement); (ECF No. 31, Ex. 3 ¶¶ 4–6, 21) (detailing familial ties between the companies and the origin of Giocar).

As Giocar fails to meet its burden to demonstrate overreaching by IG, the court declines to render the clause invalid on this ground.

### ii.      Deprivation of Day in Court

Giocar's deprivation arguments are unpersuasive. Giocar contends that it would have not a remedy in Spanish court because Spanish courts cannot adjudicate U.S.

trademark infringement matters.  As noted in the prior section, a Spanish court would not adjudicate U.S. trademark ownership or infringement but rather would determine the parties' obligations under the distribution agreement.  *See supra* Section III.B.1.i.

Giocar relies heavily on *dmarcian, Inc. v. dmarcian Eur. BV*, 60 F.4th 119 (4th Cir. 2023), and *Calzaturificio Rangoni S.p.A. v. U.S. Shoe Corp.*, 868 F. Supp. 1414 (S.D.N.Y. 1994), as demonstrative of its claim that Spanish courts are inadequate to hear its claims. These cases are legally and factually distinguishable from the one at bar, as neither involved contractual agreements containing forum selection or choice of law clauses. Neither case concerned contractual interpretation of a clause concerning intellectual property rights and assignment obligations that would be governed by foreign law.

Giocar also incorrectly asserts that Spain is inadequate as a forum because it lacks discovery procedures.  An alternative forum ordinarily is not considered "inadequate" merely because its courts afford different or less generous discovery procedures than are available under American rules." *Mercier v. Sheraton Int'l, Inc.*, 981 F.2d 1345, 1352–53 (1st Cir. 1992) (citing *Lockman Found. V. Evangelical Alliance Mission*, 930 F.2d 764, 768 (9th Cir. 1992)).  While Spain has comparably different discovery procedures, it is not entirely without them.  *See Pesquera*, 2021 U.S. Dist. LEXIS 14620, at \*45 ("Spanish courts offer parties a full and fair opportunity to gather evidence and present their case. . ."); (ECF No. 44, Ex. 1, ¶ 46) (Decl. J. Carbonell) (explaining that "Spanish procedure relies on targeted, court-supervised mechanisms" to "ensure that parties obtain relevant and necessary information through a process that is more judicially managed but equally fair.").

Considering the foregoing, Giocar has not met its burden to show it will be deprived of its day in court.

### iii.    Public Policy

Giocar argues that there is a strong public policy against foreign countries adjudicating U.S. trademark infringement or ownership.  That is not of concern here.  Furthermore, public interest factors "rarely defeat a transfer motion," Giocar again fails to carry its burden.  *See, e.g.*, *Atl. Marine Const. Co.*, 571 U.S. at 64, 62 n.6.

* * *

In sum, this court—barring a strong showing of exceptional circumstances—must respect the parties' private contractual agreement to refer their disputes to the courts of Barcelona.  *See id.* at 63, 64.  No exceptional circumstances have been shown here.

### 4.    *Partial Claim Not Within Scope of Forum Selection Clause*

Some of the conduct giving rise to Giocar's false designation of geographic origin claim allegedly did not occur during the pendency of the distribution agreement and therefore would not be subject to it.  *See supra* Section III.B.2.iii.  The court has sufficient information to determine whether dismissal is nonetheless appropriate under the traditional forum non conveniens factors, which require the defendant to demonstrate that there is an adequate alternative forum and that the balance of private and public interest factors favors dismissal.  *Cooper v. Tokyo Elec. Power Co.*, 860 F.3d 1193, 1210 (9th Cir. 2017).

The court has already determined that Spain is an adequate forum for the adjudication of the entirety of this claim.  *See supra* Section III.B.3.ii.  The balance of this analysis rests with the consideration of the public and private interest factors.  The public interest factors include: "(1) the local interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute

- 14 -

unrelated to a particular forum." *Id.* at 1211 (citing *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1232 (9th Cir. 2011)).

The court acknowledges that Giocar prefers to litigate in the United States. However, the court takes issue with fragmenting Giocar's false designation of geographic origin claim between Spain and the United States based on conduct occurring before and after the signing of the agreement. Such a ruling risks inconsistent judgments between the courts on the same claim arising from the same set of facts.

It would also be inefficient and unduly burdensome for this court to adjudicate only a part of the claim grounded in the same set of facts, particularly when the court has determined that the parties must take the rest of their disputes to the courts of Barcelona. Spain would not incur additional costs or congestion to its docket in absorbing this claim with the rest that must be conferred to it pursuant to this order.

Finally, while the United States is familiar with its U.S. country of origin laws, Spain would have to become adept with them. However, Spain would already be required to become familiar with those laws with respect to the other claims that this court must dismiss pursuant to the forum selection clause. This court does not see why a Spanish court would be incapable of applying U.S. country-of-origin laws to the extent that application of these laws does not conflict with the choice of law and forum selection provisions in the distribution agreement. *E. &. J. Gallo Winery*, 446 F.3d at 994 ("to the degree Ecuadorian law is applicable, the district court is capable of applying it").

. . .

. . .

. . .

As to private interest favors, the court considers

(1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Id.* at 1211 (citing *Carijano*, 643 F.3d at 1229.

Here, the parties would incur additional and arguably unnecessary expenses in having to proceed with dual litigation and dual discovery.  Likewise, where subjecting the claims only to the courts of Barcelona would potentially result in international travel for some witnesses from the United States, subjecting Spanish-resident witnesses to potential international travel for a fractional claim that could be handled in the same case by a Spanish court is unduly burdensome.

Finally, Giocar does not provide a basis for why a country-of-origin judgment would not be enforceable in the United States, and the court cannot find one.  Indeed, United States courts seek for "foster international cooperation and encourage reciprocal recognition of U.S. judgment in foreign courts." *Mujica v. AirScan Inc.*, 771 F.3d 580, 612 (9th Cir 2014).

**IV.    Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendant IG's motion to dismiss the first amended complaint (ECF No. 31) be, and the same hereby is, GRANTED in part.  Giocar's claims are DISMISSED WITH PREJUDICE; the parties are instructed to refer their case and claims to the courts of Barcelona.

IT IS FURTHER ORDERED that Giocar's motion for leave to file a sur-reply (ECF No. 48) be, and the same hereby is, GRANTED.  The clerk of court is instructed to detach the proposed sur-reply, attached as Exhibit A to the motion, and file it on the docket.

IT IS ALSO ORDERED that IG's motion to dismiss the original complaint (ECF No. 11) is hereby DENIED as MOOT.

DATED April 30, 2026.

_____
UNITED STATES DISTRICT JUDGE